UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LAKESIDE HEIGHTS HOMEOWNERS ASSOCIATION,<br><br>Defendant. | Case No. 14-cv-04450-WHO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Philadelphia Indemnity Insurance Co. ("Philadelphia") contends that the "subsidence exclusion" in the insurance policy between it and defendant Lakeside Heights Homeowners Association ("the HOA") means that it is not obligated to defend or indemnify the HOA in an underlying state court action in which the County of Lake brought counterclaims for negligence and loss of lateral support, among other things. The crux of the dispute is over the breadth of the term "operations" in the subsidence exclusion. The evidence submitted with Philadelphia's motion, including especially the HOA's Declaration of Covenants, Conditions and Restrictions (CC&R's) establishes, that the HOA's "operations" include maintenance of its landscape, construction activities on its property, and its irrigation and drainage systems. All possible theories of liability against the HOA in the underlying state court action, including those based on negligence, arise from those operations. Accordingly, Philadelphia's motion for summary judgment is GRANTED.

## BACKGROUND

The HOA and owners of property within the HOA asserted claims against Lake County in the Lake County Superior Court for inverse condemnation, dangerous condition of public property, and negligence in *Lakeside Heights Homeowners Association v. County of Lake*, Lake

1  County Superior Court Case No. CV-413185.  *See* Dkt. No. 33-2, Ex. A.  That lawsuit arose out of
2  a landslide, subsidence, and earth movement that occurred in 2013 and damaged the HOA's and
3  owners' property.  *Id.* ¶ 9.  In response, Lake County filed a cross-complaint against the HOA and
4  owners (collectively, "HOA") for negligence, equitable and comparative indemnity, declaratory
5  relief, and failure of lateral support (negligence).  Dkt. No. 33-2, Ex. B.  The cross-complaint
6  advances several theories against the cross-defendants involving the HOA's irrigation system,
7  land development, and purported knowledge of a potential subsidence.

8        The HOA tendered the defense to Philadelphia, and Philadelphia agreed to defend the
9  HOA with a full reservation of rights.  Dkt. No. 30-3, Ex. 6, Ex. 9.  Philadelphia subsequently
10  filed a complaint for declaratory judgment in this Court on October 3, 2014.   Compl. (Dkt. No. 1).
11  Philadelphia seeks a declaration that it does not owe a duty to defend or indemnify the HOA in the
12  underlying action.

13        The HOA moved to dismiss the action in November 2014, arguing alternatively that
14  because the same facts are at issue in both the underlying state court action and in this action, the
15  case should not proceed until the underlying action is resolved.  *See* Dkt. No. 14.  Philadelphia
16  countered that the motion should be considered as one for summary judgment that should be
17  decided in its favor.  *See* Dkt. No. 16.

18        I heard the matter and denied both parties' motions.  *See* Order at 1 (Dkt. No. 24).  I
19  declined to treat the matter as a motion for summary judgment and found that more documents –
20  such as articles of incorporation or bylaws – were needed to determine whether the subsidence
21  exclusion applies in this case.  *Id.* at 4-6.  I noted that "the duty to defend in this matter is not so
22  clear" as the HOA suggested, and that the term "operations" in the subsidence exclusion did not
23  appear to differ significantly from the term "work."  *Id.* at 5. I concluded that I needed more
24  information about Lake County's lateral support claim and Lake County's theory of liability for
25  pre-development and development activities in order to determine whether the subsidence
26  exclusion applies.  *Id.* at 6-7.  And I permitted discovery on "the scope of the HOA's operations as
27  determined by its governing documents or state law, the contours of the County's failure of lateral
28  support claim, and the responsibility of the HOA for pre-development and development activities

United States District Court
Northern District of California

as determined by its governing documents or state law." *Id.* at 7.

With its motion for summary judgment, Philadelphia submitted the HOA's maintenance bid to landscapers, landscaping maintenance instructions, a "Final Subdivision Public Report," and various discovery responses in the underlying action, as well as the HOA's by-laws, CC&Rs, corporate grant deed, and several public reports. *See* Dkt. Nos. 30-1, 30-2. I heard argument on May 27, 2015.

**LEGAL STANDARD**

A court will grant a motion for summary judgment where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Noriga v. Ahmed*, No. CV 12-0889 WHO (PR), 2013 WL 3461931, at *1 (N.D. Cal. July 9, 2013).

If the moving party meets its initial burden, the nonmoving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.*; FED. R. CIV. P. 56(a). The court will consider only material facts and not "factual disputes that are irrelevant or unnecessary." *Anderson,* 477 U.S. at 248. In order to prevail, the nonmoving party must demonstrate with reasonable particularity that the evidence precludes summary judgment. *Noriga*, 2013 WL 3461931, at *1. Absent such a showing "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal citations and quotations omitted).

**DISCUSSION**

Philadelphia's argument relies on the "subsidence exclusion" contained in the insurance policy between it and the HOA[1] which provides that

---

[1] Although Philadelphia issued five consecutive insurance policies to the HOA, all include the subsidence exclusion. *See* Mot. 3. I rely on the Policy submitted by Philadelphia in support of its first motion to dismiss. Dkt. No. 14-1, Ex. C.

3

> This insurance does not apply to:
> "Bodily injury", "property damage", "personal injury" or "advertising injury" caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, resulting from operations of the named insured or any subcontractor of the named insured.

Compl. ¶ 7; Dkt. No. 14-1, Ex. C at 28. As discussed in my prior order, this case hinges on whether the cross-claims brought by Lake County involve the "operations" of the HOA. Order at 5.

## I. EVIDENTIARY OBJECTIONS

I first address the HOA's argument that Philadelphia has failed to present sufficient evidence of its position because its supporting documents are not made with personal knowledge, lack foundation, or are not authenticated. Oppo. 14-16 (Dkt. No. 33). The HOA points out that Philadelphia failed to provide or authenticate the insurance policies giving rise to this action and that the discovery responses Philadelphia provided are unverified. *Id.* at 14-15.

In response, Philadelphia argues that the evidence need only be admissible at trial in order to satisfy Rule 56. Reply 6 (Dkt. No. 34). It cites to *McCarthy v. R.J. Reynolds Tobacco Co.*, which states: "[e]ven if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial." 819 F. Supp. 2d 923, 926 (E.D. Cal. 2011). It asserts that it can cure evidentiary problems by properly authenticating the documents, and that they do not fail for lack of foundation, lack of personal knowledge, or hearsay. Reply 7-8; *see also Joseph v. Target Corp.*, No. 2:12-CV-01962-KJM, 2015 WL 351444, at *2 (E.D. Cal. Jan. 23, 2015) ("[W]here the objecting party does not contest the authenticity of the evidence submitted, but nevertheless makes an evidentiary objection based on purely procedural grounds, such as that the documents have not been properly authenticated, then the court should consider the evidence" on motion for summary judgment) (internal quotations omitted).

I agree with Philadelphia. Both the Cusick declaration and the Meltvedt-Brown declaration state that "I have personal knowledge of the matters set forth below, and if called as a witness, could and would testify competently thereto." *See* Dkt. Nos. 30-1, 30-2. There is no

other evidence that the documents would be inadmissible for lack of foundation, lack of personal knowledge, or hearsay.

Moreover, the HOA does not contest the authenticity or validity of the documents. I took judicial notice of the insurance policy in my Order denying the HOA's motion to dismiss, which the HOA itself submitted. *See* Order at 2; Dkt. No. 14-1. And although Philadelphia did not submit the policies with its motion for summary judgment, it referred to these prior submissions to this Court in support of its motion to dismiss. *See* Dkt. No. 14-1. In opposition to Philadelphia's motion for summary judgment, the HOA again submitted the policy. *See* Dkt. No. 33-2. At the hearing, Philadelphia indicated that it would be able to authenticate the documents if necessary. Because there is no substantive objection, and because the critical language relied upon by Philadelphia in the documents is not disputed, I OVERRULE the HOA's objection.

## II. PHILADELPHIA'S DUTY TO DEFEND AND INDEMNIFY THE HOA IN THE UNDERLYING STATE COURT ACTION

A court's interpretation of an insurance policy is a question of law. *Powerine Oil Co. v. Superior Court*, 37 Cal. 4th 377, 390 (2005). The ordinary rules of contractual interpretation apply to insurance contracts. *Id.* Contractual language that is clear and explicit governs. *Id.*

An insurer must defend the insured in a suit which "potentially" seeks damages within the coverage of the policy. *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). In determining whether there is a duty to defend, the court "compar[es] the allegations of the complaint with the terms of the policy." *Id.* "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy" and the duty to defend turns on "facts known by the insurer at the inception of a third party lawsuit." *Id.*; *see also Gauntlett v. Illinois Union Ins. Co.*, No. 5:11-CV-00455 EJD, 2012 WL 4051218, at *6 (N.D. Cal. Sept. 13, 2012) ("Whether coverage exists does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy.") (internal quotations omitted).

Generally, the court interprets exclusionary clauses narrowly, but interprets clauses identifying coverage broadly. *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989). When

determining the scope of the coverage and exclusionary clauses, words should be interpreted according to the plain meaning that a layman would ordinarily attach to them. *Jordan v. Allstate Ins. Co*., 116 Cal. App. 4th 1206, 1214 (2004).

The applicability of the exclusion hinges on consideration of the allegations in the cross-complaint and Lake County's claims against the HOA. Accordingly, I examine them below.[2]

**A. The Cross-Complaint**

Lake County's first cause of action is for negligence. It states that the HOA's private irrigation system gave rise to "excessive overwatering and/or irrigation leaks" and "saturated the grounds of the Subject Property with enormous amounts of water." Cross-Compl. ¶¶ 9-11 (Dkt. No. 33-2). It contends that the HOA was on notice of the deficiencies in its irrigation system, and that when repairs were made they were done in "a substandard manner and with neglect and reckless disregard for the safety and protection of the Subject Property. . ." *Id.* ¶¶ 12-13. According to the cross-complaint, this was a substantial factor in causing the damages. *Id.* ¶ 13.

Lake County also claims in its negligence cause of action that the HOA had actual or constructive notice of "earth movement" in 1996 and 2006 but ignored the recommendations of land consultants, and that the HOA did not fix its private storm drain that was malfunctioning. *Id.* ¶¶ 14-15. Additionally, it states that the HOA was "negligent for developing the Subject Property in a manner inconsistent with the recommendations of the geotechnical engineer(s)" and for failing to disclose "at the approval stage of the project that the Subject Property, or at least that portion that has sustained catastrophic damage, was built over an old slide area." *Id.* ¶ 17. "The fact that the old landslide debris had not been removed in advance of development, that non-engineered fill was placed over the same, and with an absence of a proper drainage system in an area where the surficial soil is not expansive and was known to undergo significant strength loss and become weak and compressible when saturated, are all substantial factors" in causing the damage. *Id.*[3]

---

[2] Notwithstanding the HOA's procedural objections to Philadelphia's evidence, it does not object to the facts contained therein or their truth. I consider the facts below to be undisputed.
[3] The second, third, and fourth causes of action in the cross-complaint allege equitable indemnity, comparative indemnity, and declaratory relief based upon the same allegations. *See* Cross-Compl.

6

1    The fifth cause of action is for "Failure of Lateral Support (Negligence)." Lake County
2 asserts that the HOA "owed a duty to maintain the Subject Property so that the subdivision and
3 surrounding land would continue to provide lateral support to the public right of way below." *Id.*
4 ¶ 30. It alleges that the "landscaping, vegetation, irrigation and uncontained waters on the Subject
5 Property could cause soil on the subdivision and surrounding land to lose strength and cause a
6 failure of lateral support" and that "related improvements, maintained and controlled by [the
7 HOA]," should additionally be reinforced to prevent the failure of lateral support. *Id.* ¶ 31. It
8 contends that the HOA "breached [its] duty to properly maintain the Subject Property so that the
9 subdivision and surrounding land would continue to provide lateral support" by failing to properly
10 maintain its landscaping and irrigation. *Id.* ¶ 32. The breach was also caused by "overwatering of
11 landscaping and failure to monitor, maintain and repair their subpar and failing private irrigation
12 system which consistently leaked" and released water into the land. *Id.* ¶ 33.

### B. Facts related to the underlying state court action

#### 1. The HOA's governing documents

The HOA's CC&Rs provide the greatest amount of information about what is considered to be its "operations." *See* Dkt. No. 30-2, Ex. 3. The CC&Rs provide several key definitions: "Common area" is defined as all property that is not residential lots, and "common expenses" include "all expenses or charges incurred by or on behalf of the Association for the management, maintenance, administration, insurance, operation, repairs, additions, alterations or reconstruction of the Common Area [or] Common Facilities . . . ." *Id.* at 2-3. The term "Improvement" is defined as "the construction, reconstruction, installation, alternation, or remodeling of any buildings, walls, decks, fences, swimming pools, driveways, alleys, painting, landscaping, landscape structures, irrigation systems, skylights, solar heating systems, spas, antennas, satellite dishes, exterior air conditioners and water softeners, utility lines, or any structure of any kind." *Id.* at 3.

In discussing the HOA's rights and responsibilities, the CC&Rs state that the HOA has the

---

¶¶ 20-38.

7

right to borrow money to improve the common area. *Id.* at 6; *see also id.* at 17 (individual owners are liable for cost caused "[i]n the event that any damage to, or destruction of, any portion of the Common Area, including any portion of the Lot which the Association is obligated to repair and maintain . . . "). The CC&Rs state: "[t]he Association shall have the responsibility of managing and maintaining the Common Areas and discharging the other duties and responsibilities imposed on the Association by the Governing Documents." *Id.* at 11. "[I]f any Lot is maintained so as to become a nuisance, fire or safety hazard for any reason . . . the Association shall have the right to enter said Lot, correct the offensive or hazardous condition and recover the cost." *Id.* at 18.

In addition, the HOA has an "architectural committee" which pre-approves all "Improvements" made by homeowners on the property. *Id.* at 23-25, 29. The committee can determine that a proposed Improvement is unacceptable "if factors such as drainage, topography . . . or prior adverse experience with the product or components used in construction of the Improvement . . . mitigate against erection." *Id.* at 25. The committee is also involved during construction and will conduct inspections. *Id.* at 27. In particular, the CC&Rs state that "[n]o Owner shall do any work, construct any Improvement, place any landscaping or suffer the existence of any condition whatsoever which shall alter or interfere with the drainage pattern for the Owner's or any adjacent Lots or parcels or Common Area." *Id.* at 29.

With regard to the Common Area, the CC&Rs state that "[n]o Improvement, excavation or work which in any way alters any Common Area from its natural or existing state shall be made or done except by the Association and then only in strict compliance with the provisions of this Declaration." *Id.* at 30. Owners are liable to the HOA for any damages to the Common Area caused by their negligence. *Id.* Under the section entitled "maintenance responsibilities," the CC&Rs state that

> The Association shall be solely responsible for all maintenance, repair, upkeep and replacement within the Common Area, landscaping in the unfenced front, side and back yards of each Lot and all utility lines, except those within a Residence. No person other than the Association or its duly authorized agents shall construct, reconstruct, refinish, alter or maintain any Improvement upon, or shall create any excavation or fill or change the natural or existing drainage of any portion of the Common Area. In addition, no person shall remove any tree, shrub or other vegetation from, or

plant any tree, shrub, or other vegetation upon the Common Area without written approval of the Association.

*Id.* at 35.

Philadelphia also provided the HOA's prior CC&Rs that were enacted in 1983. Cusick Decl. 25 (Dkt. No. 30-1).[4] They specifically state that sewers and landscaped areas are Common Area. *Id.* at 27. They also state that "[a]ll of such telephone lines, pipes, conduits and culverts and sprinkler systems shall be cared for, repaired, and maintained by the Association or the respective utility." *Id.* at 40. In addition, "[t]he Association shall keep all improvements of whatever kind and for whatever purpose from time to time located on the Common Areas, including all utility lines, pipes, conduits and facilities located thereon and owned by the Association, in good order and repair." *Id.* at 52. The HOA is also responsible for all landscaping. *Id.*

Next, Philadelphia submitted the HOA's bylaws from 1983 and 2004. *See* Cusick Decl., Ex. A; Dkt. No. 30-2, Ex. 4. The 1983 bylaws provide that the Board of Directors is responsible for maintaining the Common Area and the exterior of the buildings. Cusick Decl. at 14-15. The 2004 bylaws similarly state that the Board shall "[c]ontract for and pay for maintenance, landscaping, utilities, materials, supplies, labor, and services that may be required from time to time in relation to the Common Areas and other portions of the Project which the Association is obligated to maintain." Dkt. No. 30-2, Ex. 4 at 14-15.

Finally, Philadelphia submitted a maintenance bid for a landscaping company listing proposed landscaping responsibilities: "[e]valuate the entire sprinkler system and notify Association of needed repairs, retrofits and/or needed replacement installations" and "[n]otify of seasonal water problems which develop relating to drainage, runoff, standing water, etc." Cusick Decl. at 90. It also submitted "landscape maintenance instructions" that list requirements for watering the Common Area and maintaining the irrigation system. *Id.* at 92-94.

**2. Investigation of the landslide**

On April 4, 2013, Lake County issued a press release stating that "[a]s the public is aware, a significant amount of movement in the hillside at Lakeside Heights Subdivision has caused

---

[4] Page numbers in the documents contained in the Cusick declaration refer to the page number of the entire document filed as Docket 30-1.

9

1    damage to several homes and the sewer line, and created a potential loss to Hill Road and the
2    public water system feeding the subdivision." Dkt. No. 30-2, Ex. 5.  This resulted in part from a
3    damaged sewer line.  *Id.*  Accordingly, Lake County, through its Special Districts Administration,
4    hired RGH Consultants to perform a geotechnical investigation.  *Id.*

5            The release states that while investigating, the Administration noticed a "saturation of
6    water" that was believed to be "contributing to the unstable hillside."  *Id.*  This could have resulted
7    from a "leaking irrigation line, water line or natural spring."  *Id.*  The Administration hired a leak
8    detection firm, which found no leaks in the district's lines but "a suspicion of a significant leak or
9    leaks" in the HOA's irrigation line.  *Id.*

10           The Preliminary Geologic Consultation Report from RGH Consultants was completed on
11   May 29, 2013.  *See* Dkt. No. 30-3, Ex. 8.  This described the investigations conducted and the
12   subsurface water encountered.  *Id.* at 1-4.  In its "Conclusions and Recommendations," it stated
13   that "the water and sewer within Lancaster Road are in jeopardy of being compromised by the
14   continued movement of the landslide" and that "[t]he landslide is likely failing on the former
15   failure plane or an inherent weak layer within the terrace deposits."  *Id.* at 5.  It found:

> The driving forces that are most obvious in this landslide are water, former slope instability and the placement of new loads (fill and homes) within formerly unstable areas. . . It has been documented that the hillside has had a history of high perched subsurface water, however it has been reported that irrigation leaks and the activities related to a fire in the neighborhood had released water into the hillside in the weeks prior to the first observed movement of this failure.

*Id.* at 6.  The Report concluded that "[i]t is difficult to determine what the final contributing driving force actually was but it is more likely that the culmination of the [] driving forces were finally enough to overcome the resisting forces and the landslide began to have accelerated movement."  *Id.*  It also stated that Lake County is seismically active, with several small earthquakes that occurred before the landslide.  *Id.*

        The Report also made note of a prior report completed by Applied Earth Sciences, Inc. in 1979.  *Id.* at 4.  The 1979 investigation did not "discuss the presence or absence of landslides," but recommended that "the surficial soil and the soft alluvial soil in areas of planned fill and at grade

10

1  should be properly conditioned to provide adequate support for buildings, pavements and any fill."
2  *Id.*; Ex. 30-3, Ex. 7 at 5. The investigation also recommended installation of "underdrains beneath
3  all fills over natural drainage ravines and channels." *Id.* at 6.
4       On April 9, 2013, the HOA sent a notice to Philadelphia of an occurrence/claim, stating
5  that a "[p]otential landslide has developed at the Lakeside Heights subdivision" and that "one of
6  the potential causes are [sic] suspicious leaks in the HOA's 2" irrigation line." Dkt. No. 30-2, Ex.
7  1.

### 3. Discovery in the underlying state court case

Philadelphia submitted Lake County's Amended Responses to the HOA's Special Interrogatories in the underlying case. *See* Dkt. No. 30-4, Ex. 10. Lake County stated that "there was more than one break in the County-maintained potable water piping system" prior to March of 2013. *Id.* at 20-22. Furthermore, Lake County stated that "leaks in the public water system were not a substantial factor in causing a landslide at the Lakeside Heights subdivision . . . beginning in March 2013." *Id.* at 27-28. It contended that this was because there was no evidence that breaks in the public water system were "a substantial factor in causing the subject landslide" and that "[i]f water infiltration was a factor, whether or not a substantial factor, it was the release of some two million gallons of water in 2012 from the irrigation system in a short window of time on the plaintiff's owned/maintained side of the meter(s)." *Id.* at 30. In addition, "[o]ther factors were the [plaintiff]'s inadequate storm drain system and failure to maintain the same along with the substandard construction of the development." *Id.*

Furthermore, Lake County repeatedly stated its position that

> [T]he superceding, intervening cause of the earth movement was the failure of the developer to pre-condition the land prior to constructing the Lakeside Heights development and/or the failure of the developer's geotechnical engineer to identify these necessary steps. Notably, during site gradient the primary zone of movement is in the same location as a prior pre-development landslide. Accordingly, pre-development, the prior slide debris should have been removed, a proper drainage system should have been installed and engineered fill material should have been placed. Not only was none of this accomplished, but non-engineered fill was added, all without necessary drainage. Additionally, the non-engineered fill was placed on sloping terrain rather than on a flat bench, contrary to the recommendations of the developer's geotechnical soils engineer.

11

> Had the hillside been properly pre-engineered per the above, the earth movement would not have occurred even with the presence of any purported water intrusion.

*Id.* at 47.

Similarly, Lake County's responses to cross-defendants' Special Interrogatories sets forth the theory that "[t]he HOA was on notice as early as the 1980s that draining problems were plaguing the development which was compounded by excessive water usage and leaks in its substandard irrigation and storm drains systems." Dkt. No. 30-4, Ex. 11 at 3. In addition, "[t]he poor construction of the homes and development and absence and/or deficiencies of the storm drains, downspouts and/or gutters resulted in erosion of the common areas and the rears of the homes along Lancaster Road." *Id.* The responses continue that by the 1990s "the HOA was on further notice of ongoing drainage deficiencies and soil erosion," but failed to mitigate the situation. *Id.* at 4. There were no "catch basins" to divert the water and a deficient irrigation system. *Id.*

### C. The HOA's potential theories of liability

The parties do not dispute that the subsidence exclusion applies only to HOA's "operations." Oppo. 4. In my prior order, I expressed concern that there was no evidence "regarding the breadth of the County's allegations and what facts underlie the County's claim of lateral support." Order at 6. Similarly, I noted that "[n]either side addresses *why* the HOA would have liability for pre-development and development activities." *Id.* at 7. I stated that cross-complaint did not include facts that would support a finding of the HOA's liability for those activities, but that the HOA's governing documents or California Code provisions may provide the answers. *Id.*

In resolving this motion, I note that the only discovery information that Philadelphia submitted pertaining to Lake County's allegations is the two sets of Lake County's Responses to Special Interrogatories. At the same time, I am not persuaded by either of the HOA's arguments of possible liability that fall outside of the subsidence exclusion. Nor do there appear to be any facts available to Lake County, or anything in its complaint, investigatory documents, or discovery responses, that support liability outside of the subsidence exclusion. I examine each potential theory proffered by the HOA in turn.

### 1. The HOA's current activities as "operations"

The HOA points out that its legal duties do not equate to "operations." Oppo. 4. It asserts that its "operations" are limited to landscaping and other day-to-day maintenance, such as mowing grass, maintaining street signs, patching asphalt, maintaining the mail facility, and other aesthetic upkeep. *Id.* at 5. The HOA also contends that it does not maintain the sewer and water system, which is a public system. *Id.*

These arguments are contradicted by the evidence of record. The HOA's governing documents indicate that it is responsible for all maintenance on all common areas of the property that allegedly caused the damages. In addition, the California Civil Code states that a homeowner's association "is responsible for repairing, replacing, or maintaining the common area, other than exclusive use common area." CAL. CIV. CODE. 4775. The HOA's actions that could potentially give rise to liability under the cross-complaint are the creation and operation of its irrigation system and the maintenance of its premises, including its failure to remedy construction that contributed to earth movement or that was inconsistent with the advice of geotechnical engineers, and its failure to fix its private storm drain. *See* Cross-Compl. ¶¶ 9-17. All of these actions or inactions come directly under the HOA's rights and responsibilities as set forth in its governing documents.[5]

To be sure, it is possible that the damages in the underlying case are not caused by the HOA's operations, but instead by factors such as seismic activity, fires, or Lake County's public water system. However, those causes will not expose the HOA to liability. Lake County does not make such allegations. Rather, Lake County's cross-complaint, the relevant focus of this motion, discusses the current activities of the HOA that led to the alleged damages. Philadelphia met its initial burden of showing that no reasonable trier of fact could find a theory of liability that would not result from the HOA's "operations."

---

[5] The HOA does not and could not seriously contend that it is not responsible for landscaping and irrigation, which comprise Lake County's primary allegations and which fall under its "operations" as set forth in its bylaws, CC&Rs, and the other documents submitted by Philadelphia.

13

### 2. Premises Liability

The HOA advances two potential theories of liability that would not fall under the subsidence exclusion because they relate to past activity that occurred before the HOA could have conducted "operations." First, it points to a premises liability theory: "[u]nder California law if a prior landowner creates latent defects in the land, and damage occurs to a third-party during subsequent ownership as a result of the latent defects, the prior landowner is not liable (absent active concealment) but the subsequent owner is liable subject to ordinary negligence principles." Oppo. 7 (emphasis omitted). In particular, the HOA emphasizes the allegations of the landslide in the cross-complaint, stating that it could give rise to liability under a negligence theory that the HOA breached its duty of care to prevent the landslide. *Id.* at 8-9. Second, it cites the complaint's allegations that "pre-HOA site work" and excavation deficiencies allegedly damaged County property. *Id.* at 6, 8.

As Philadelphia asserts, ordinary negligence principles require the HOA to exercise the proper duty of care in maintaining its property. Reply 4; *see also Carter v. Nat'l R.R. Passenger Corp.*, No. 13-CV-00809-JCS, 2014 WL 3974732, at *20 (N.D. Cal. Aug. 8, 2014); *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1619 (Ct. App. 1989). This is consistent with the allegations in the cross-complaint and in the discovery responses that indicate that the HOA's liability is founded on its failure to maintain the property and/or remedy conditions giving rise to the landslide.

In short, the HOA's liability arises out of its *current*, post-development activities in maintaining its land. As discussed above, the only ongoing "maintenance" activities of the HOA that could give rise to liability under the cross-complaint are those that fall under its "operations" pursuant to the subsidence exclusion. For this reason, the subsidence exclusion applies to any liability based on premises liability.

### 3. Liability Based on Loss of Lateral Support

Second, the HOA argues that it could be liable under a lateral support theory. Oppo. 9. California law gives property owners the right to lateral and subjacent support from adjoining land. CAL. CIV. CODE § 832. A landowner may be liable if he does not "remedy allegedly

14

defective, previously performed, site work" even if performed by a prior owner. *See* Oppo. 10; *see also Lee v. Takao Bldg. Dev. Co.*, 175 Cal. App. 3d 565, 569 (Ct. App. 1985).

Again, the HOA points to the cross-complaint's allegations relating to pre-HOA development activities and the "natural landslide that allegedly exists at the subdivision." *Id.* at 6. It says that the original construction and site work is not an operation of the HOA, but was rather under the purview of the pre-HOA developer of the subdivision. *Id.* Likewise, it cites the allegations of a natural landslide, which is not an "operation" of the HOA. *Id.* at 6-7.

For the same reasons that the premises liability argument does not provide the HOA with a theory of liability not dependent upon its present "operations," the loss of lateral support theory also fails. As the HOA states, "[i]f a landowner, like the HOA in this case, does not remedy allegedly defective, previously performed, site work said subsequent landowner may be liable to the adjacent property owner for loss of lateral support even though the allegedly defective site work was performed by the prior owner." Oppo. 10. Like the premises liability theory, this theory requires a subsequent landowner's failure to remedy allegedly defective work by a past owner. The HOA's operations involve maintenance of the structures on the property and supervision of all new construction. The HOA's alleged liability based upon failure to remedy is consistent with the allegations by Lake County in the cross-complaint and in the discovery responses. Liability under a lack of lateral support theory is included under the subsidence exclusion.

### 4. "Products-completed Operations Hazard" Provision

Finally, I address the HOA's argument that the "products completed operations coverage" covers negligent past performance of irrigation repair work. Oppo. 10-11. Although such coverage is often excluded from insurance policies, the HOA emphasizes that it specifically purchased the coverage from Philadelphia. *Id.* at 10. The HOA contends that the coverage "insures against alleged damage that manifests after (sometimes long after) a task is completed due to allegedly negligent 'work,' 'operations,' installation of defective materials, handling of defective products, or similar, by a named insured or by anyone doing work on the named insured's behalf." *Id.*

15

The "products-completed operations hazard" "[i]ncludes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" Dkt. No. 14-1, Ex. C at 15. The HOA contends that the "subsidence exclusion does not exclude the broader range of potential liabilities insured against by the products completed operations coverage." Oppo. 13. It takes the position that the subsidence exclusion does not apply to this coverage because the products completed operations coverage covers a range of liabilities that are not otherwise included in the policy or excluded from the subsidence exclusion. *Id.* While the HOA cites to the policy's definition of "products-completed operations hazard," *see* Dkt. No. 14-1, Ex. C at 14, it does not submit a separate insurance document that supports its position other than a record that the HOA paid for a limit of $3,000,000 for "Products/Completed Operations Aggregate Limit." See Dkt. No. 33-1 at 5.

In reply, Philadelphia states that products completed operations hazard is a defined term in the policy, not a stand-alone coverage agreement. Reply 10. It claims that the function of this term is to "interact with two exclusions (separate from the Subsidence Exclusion) to show which of those two applies to ongoing operations and which applies to completed operations." *Id.* These exclusions apply to ongoing operations and completed operations, with each subject to a separate $3 million aggregate limit of liability. *Id.*

Philadelphia further argues that the purpose of the "products-completed operations hazard" provision is to allow coverage for damage arising under "exclusion j" of the policy. *Id.* at 11. This exclusion precludes recovery for damages arising from incorrect work. *Id.*; *see also* Dkt. No. 14-1, Ex. C at 5. Another provision of the policy states that "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products completed operations hazard' . . . does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Dkt. No. 14-1, Ex. C at 5. According to Philadelphia, the "products-completed operations hazard" provision dictates when the "subcontractor exception to the faulty-workmanship exclusions" applies under the policy, but does not render the subsidence exclusion inapplicable in this case. Oppo. 11.

Philadelphia's interpretation of the term is sounder. While the HOA fails to explain how

16

1  this provision applies to override the subsidence exclusion, Philadelphia provides specific citations where the policy applies or does not apply the "products-completed operations hazard." The language of the subsidence exclusion is clear, and unlike exclusion (j) of the policy, does not mention that it is subject to the products-completed operations hazard. *See* Dkt. No. 14-1, Ex. C at 4-5, 28. In addition, unlike the products-completed operations hazard, the subsidence exclusion is separate from the rest of the policy and explicitly states that it "changes the policy." *Id.* at 28. I conclude that the products-completed operations hazard purchased is subject to the subsidence exclusion. *See* 3 Allan D. Windt, *Insurance Claims and Disputes* § 11:20 (6th ed.) ("The fact that there is generally coverage for and a separate policy limit for the completed operations hazard does not mean that claims encompassed by the hazard do not have to satisfy the basic insuring clause or are not subject to the exclusions in the policy"); *Am. Home Assur. Co. v. AGM Marine Contractors, Inc.*, 379 F. Supp. 2d 134, 137 (D. Mass. 2005) *aff'd,* 467 F.3d 810 (1st Cir. 2006) ("The 'products-completed operations hazard' provision is not a separate policy but a subpart of the entire policy"); *Sting Sec., Inc. v. First Mercury Syndicate, Inc.*, 791 F. Supp. 555, 563 (D. Md. 1992).

## CONCLUSION

After Philadelphia met its initial burden of showing that no reasonable trier of fact could find a theory of liability that would not result from the HOA's "operations," the HOA failed to set forth specific facts or theories that show that it may be liable under a theory *not* arising out of its operations. The HOA's arguments based upon potential claims of premises liability and loss of lateral support each fail to fall outside of the subsidence exclusion. For the reasons discussed above, Philadelphia's motion for summary judgment is GRANTED. Philadelphia is not obligated to indemnify the HOA in the underlying action under the terms of the insurance policy. Judgment will be entered accordingly.

**IT IS SO ORDERED**.

Dated: June 18, 2015



WILLIAM H. ORRICK
United States District Judge